COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Athey, Chaney and Lorish
Argued at Richmond, Virginia


TYNICIA ALTHEA COX

v.        Record No. 0241-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE VERNIDA R. CHANEY
JUNE 13, 2023


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Joseph J. Ellis, Judge Designate

(Alexander Raymond, on brief), for appellant.  Appellant
submitting on brief.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Tynicia Althea Cox appeals the trial court's judgment convicting her of conspiracy to

distribute a Schedule I or II controlled substance and distribution of a Schedule I or II substance.[1]

Cox contends that the trial court erred in convicting her based on the self-serving, inherently

incredible testimony of her alleged co-conspirator.  For the following reasons, we affirm the trial

court's judgment.

_____

* This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] The circuit court's October 7, 2021 conviction order and February 10, 2022 sentencing
order incorrectly state that the code section related to the conspiracy conviction is "18.2-248"
instead of Code § 18.2-256.  Pursuant to Code § 8.01-428,

> [c]lerical mistakes in all judgments or other parts of the record and
> errors therein arising from oversight or from an inadvertent
> omission may be corrected by the court at any time on its own
> initiative or upon the motion of any party and after such notice, as
> the court may order.

Code § 8.01-428(B).

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party" in the trial court. *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This Court "regard[s] as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* (citing *Gerald*, 295 Va. at 473).

On March 2, 2021, Cox distributed Eutylone, a Schedule I controlled substance, to her friend, Kellie Modesitt, who in turn distributed it to Modesitt's friend, Dylan Hughes. Cox, Modesitt, and Hughes referred to the Eutylone by its street name, "boot."[2] That morning, Hughes told Modesitt that "[h]e wanted a boot." In response, Modesitt sent a text message to Cox stating that her "friend . . . stopped by and he wants boots." Another text message from Modesitt to Cox stated, "I need the boot for Dylan." After Cox replied by text asking, "How much boot[?]," Modesitt answered, "just a dub," two-tenths of a gram of Eutylone. Cox responded, "K u know where im at." Subsequently, Hughes drove Modesitt to the hotel where Cox was staying, and Cox sold "boot" to Modesitt. After Cox handed the Eutylone to Modesitt, Modesitt placed it in a cigarette pack and gave it to Hughes when she returned to his car.

As Hughes was driving Modesitt home from Cox's hotel, the police stopped Hughes's car. Hughes informed the police that he had drugs in the cigarette pack in his car and a syringe in his pocket. Hughes gave the police the cigarette pack containing "boot" and placed the syringe in the car for the police to recover. The police sent the suspected controlled substance to the Virginia Department of Forensic Science (DFS) for analysis. DFS determined that the substance was Eutylone, a Schedule I controlled substance.

---

[2] Eutylone is sold on the street as a less pure and significantly less expensive alternative to MDMA, a Schedule I controlled substance street-named "Molly." MDMA is short for "3,4-methylenedioxymethamphetamine." *See* Code § 54.1-3446(3).

During the traffic stop, an officer obtained Modesitt's identifying information and discovered that she had an unserved felony arrest warrant for drug possession. The police took Modesitt into custody, and she allowed the police to examine the contents of her cell phone. A detective observed Modesitt's text messages with Cox about distributing a "dub of boot." The detective then took custody of Modesitt's cell phone as evidence. Modesitt had no opportunity to alter any text messages in her phone after the police took custody of her phone.

Later that day, the police identified and arrested Cox. Cox's cell phone was not in her physical possession when she was arrested, and the police never found it. In a search of Cox's shoulder bag incident to her arrest, the police found "hundreds of dollars of loose U.S. currency." Cox told a police detective that she had received the $100 bill in the bag from a man named Jared, to whom she sold "down," a street name for heroin. The police seized this bill after Cox indicated that she did not want it in her possession.

After the police advised Cox of her *Miranda v. Arizona*, 384 U.S. 436 (1966), rights, Cox stated that the heroin she sold for $100 was not provided in a "direct hand-to-hand," but instead the money and drugs were both placed on the bed. Cox told the detective that she was a "middle person" and that "she can get her hands on small quantities of drugs to include boot."

At trial, Modesitt's cell phone was retrieved from police custody, and Modesitt read into evidence her texts with Cox about "boot" distribution. Screenshots of these text communications were also admitted into evidence. Cox's text messages were identified in Modesitt's phone by Cox's first name and a photo of Cox. During Modesitt's testimony, she acknowledged that she had three felony convictions and one petit larceny conviction.

After the Commonwealth rested its case, Cox testified in her own defense. Cox denied exchanging any text messages with Modesitt on March 2, 2021. Cox testified that her cell phone was stolen in February 2021 and that the only means of contacting her by phone in March 2021 was

by calling her hotel room phone. Although Cox acknowledged on cross-examination that Modesitt was her friend, Cox denied ever communicating with Modesitt through text messages or phone calls, other than calls to her hotel room phone. However, Cox identified herself in the picture of the contact in Modesitt's phone named "Tynesha," a misspelling of Cox's first name, Tynicia. "Tynesha" sent Modesitt the March 2 text messages about "boot."

Cox acknowledged that she was in her hotel room on the morning of March 2, 2021, but she denied that Modesitt met her there that morning. Cox testified that the night before, Modesitt left her bags in Cox's hotel room because Modesitt could not afford her own hotel room. Cox further testified that on the morning of March 2, she received a call informing her that Modesitt "had OD'd," and the caller asked Cox to bring Narcan from Modesitt's bag to the scene of the overdose. Cox testified that she "ran over there," delivered the Narcan, and returned to her hotel room. Cox denied seeing Modesitt again that morning and denied selling her "boot" or any other drug.

Cox further testified that she had a total of $543 in her bag when she was arrested on March 2, including $400 from unemployment and the $100 bill that was seized by the police. Cox explained that earlier that day, a man named Jared gave her the $100 bill as repayment of money that he had borrowed from her the day before. Cox admitted that after Jared gave her the $100 bill, they "did heroin" together. Cox added that she thought that the $100 bill "came from the police."

Cox also testified that she told the detective about "being a middleman" because she was scared of being "locked up" and the detective told her she would receive leniency if she "was to help them." On cross-examination, Cox acknowledged that she was "a middleman for down," i.e., heroin.

Following closing arguments, the trial court pronounced, "The Court does not find Ms. Cox's testimony credible. In fact, the Court finds much of it incredible. As such, the Court finds Ms. Cox guilty of both charges." At the sentencing hearing, the trial court addressed Cox and

- 4 -

stated, "I found the version of events that you gave the Court to be completely incredible. . . . I didn't believe you." The trial court also stated on the record, "I found the testimony of the witnesses against you to be highly credible."

Cox testified at the sentencing hearing about her desire for substance abuse treatment and her plan for a drug-free future. The trial court pronounced, "I find your testimony about wanting to get help today highly credible." The court sentenced Cox to incarceration for 10 years with all 10 years suspended on the conspiracy conviction, and incarceration for 10 years with 9 years and 6 months suspended on the conviction for distribution of a Schedule I or II controlled substance. This appeal followed.

ANALYSIS

Cox contends that the evidence is insufficient to sustain her convictions because the Commonwealth's case was based on the self-serving, inherently incredible testimony of Modesitt, "an uncharged co-defendant." Cox argues that Modesitt had a motive "to deflect blame to anyone else" because she was wanted for another drug charge and had been apprehended with drugs in her vehicle. Cox contends that the Commonwealth failed to exclude the hypothesis that Modesitt was not truthful and was shifting blame to Cox.

When an appellant challenges the sufficiency of the evidence to support a criminal conviction, this Court "reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." *Commonwealth v. Herring*, 288 Va. 59, 66 (2014) (quoting *Allen v. Commonwealth*, 287 Va. 68, 72 (2014)). At issue on appeal is "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). The trial court's

judgment will be affirmed "unless it is plainly wrong or without evidence to support it." *Sarka v. Commonwealth*, 73 Va. App. 56, 62 (2021); *see also* Code § 8.01-680.

On appellate review, this Court defers to the fact-finder's credibility determinations unless the witness's testimony is "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). A motive to lie does not render a witness's testimony inherently incredible. *See Kelley*, 69 Va. App. at 627. "Determining the credibility of witnesses who give conflicting accounts is within the exclusive province of the [trial court as fact-finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993).

The trial court expressly found that Modesitt's testimony implicating Cox was "highly credible," notwithstanding any self-serving motive she may have had. Additionally, the trial court found Cox's account of events to be "completely incredible." Modesitt's testimony was not inherently incredible because it was not "so contrary to human experience as to render it unworthy of belief." *Kelley*, 69 Va. App. at 626 (quoting *Johnson*, 58 Va. App. at 315). Therefore, this Court defers to the trial court's credibility determinations. Modesitt's testimony, in conjunction with the other evidence, supports the trial court's findings that Cox conspired with Modesitt to distribute Eutylone to Hughes and that Cox distributed Eutylone to Modesitt. Therefore, the evidence is sufficient to sustain the conspiracy and drug distribution convictions.

CONCLUSION

The evidence is sufficient to sustain the convictions for conspiracy to distribute and distribution of a Schedule I or II controlled substance. Therefore, this Court affirms the trial court's judgment.

*Affirmed*.